UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN HENRY LANCASTER,

    Petitioner,

v.                                                    Case No. 6:15-cv-2081-Orl28GJK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____

## ORDER

Petitioner initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondents filed a response (Doc. 7), to which Petitioner replied. (Doc. 11). For the reasons set forth below, the petition is denied.

### I.    Procedural History

Petitioner was charged with robbery and with trafficking in illegal drugs. (Doc. 8-1 at 5). The charges arose out of a robbery at a CVS pharmacy in Rockledge, Florida involving one hundred oxycodone pills with a total weight of approximately fifteen grams. (Doc. 8-1 at 30; Doc. 8-4 at 41).[1]

---

[1] Because of Petitioner's prior criminal history, he would qualify for an extended sentence as a habitual felony offender under F.S.A. § 775.084(a)(1) and, therefore, subject to a potential sentence of thirty years if convicted of robbery and up to life if convicted of trafficking. F.S.A. §§ 775.084(4)(a)1-2. Because of the weight of the oxycodone involved, Petitioner was subject to a minimum mandatory sentence of fifteen years under F.S.A. § 893.135(1)(c), and a potential sentence of thirty years under F.S.A. § 775.082(3)(b), if convicted of trafficking regardless of whether he qualified as a habitual felony offender.

Prior to trial, the court asked the State about plea negotiations and the following exchange ensued:

> Mr. Loughran: The plea offer is 15 years Department of Corrections. Trafficking is a mandatory minimum. . . . Trafficking is a mandatory minimum 15 years and that's what the offer is . . . . He's also facing on Count I, robbery, habitual felony offender possibly, you know the –
>
> The Court: Which would be up to 30 years.
>
> Mr. Loughran: That would include – increase it to 30 years. And, of course, Court II is already 30 years because it's a first degree felony.

(Doc. 8-1 at 13-14). The court then asked whether counsel had an opportunity to discuss the plea with Petitioner. Counsel responded:

> I did relay the 15-year minimum mandatory as attached to the drug trafficking to Mr. Lancaster. . . . My client does not want to go to trial. He wants to resolve this case, but as I informed him, unless the State is willing to waive the minimum mandatory, this Court's hands are tied. You don't have any discretion to give him anything other than 15 years. So Mr. Lancaster's position is that, you know, he thinks that that's a little steep . . . . My client doesn't want to plea to the 15.
>
> The issue obviously is the first degree felony. If the HFO does apply to that, then that would bump his exposure from 30 to a 60, potentially, if not a life, based on the qualifications. I would think the Court would agree that if it has to impose the HFO sentence, that it has to be at least 15 years. . . . But I think that – we've had this conversation and he –

(Doc. 8-1 at 14-15). The court then asked Petitioner whether he understood the "nature of the charges and the maximum penalties that could be imposed." Petitioner answered, under oath, "Yes, sir, I believe so." (Doc. 8-1 at 15). Petitioner also acknowledged, under oath, that he had a "meaningful discussion" with counsel about the charges and penalties; that counsel answered all of his questions "to the best of his ability;" and that he "pretty

much" understood what counsel explained to him. (Doc. 8-1 at 15-16). Petitioner ultimately rejected the plea offer, stating "I would reject it on I don't feel that it meets – it just doesn't seem right." (Doc. 8-1 at 17). Petitioner acknowledged he made the decision to reject the plea freely, voluntarily and without any threats, coercion or promises. (Doc. 8-1 at 17).

The case proceeded to trial before a jury, at the conclusion of which Petitioner was found guilty of both robbery and trafficking. (Doc. 8-5 at 17-18). The court sentenced Petitioner to concurrent terms of twenty years, with a fifteen-year minimum mandatory sentence for trafficking. (Doc. 8-5 at 41-42, 48-50).

Petitioner appealed and his court-appointed counsel filed an *Anders* brief. (Doc. 8-5 at 95). The Florida Fifth District Court of Appeal (the "Fifth DCA") affirmed *per curiam*. (Doc. 8-5 at 195).

Petitioner then filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Doc. 8-5 at 123). The court denied the motion. (Doc. 8-5 at 134). Petitioner appealed (Doc. 8-5 at 144), and the Fifth DCA affirmed *per curiam*. (Doc. 8-5 at 178). Petitioner made a motion for rehearing (Doc. 8-5 at 180), but the Fifth DCA denied the motion. (Doc. 8-5 at 184).

## II. LEGAL STANDARDS

### A. Habeas Relief Under the Antiterrorism Effective Death Penalty Act

The Antiterrorism Effective Death Penalty Act ("AEDPA") provides that habeas relief cannot be granted with respect to a claim adjudicated on the merits in a state court

unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). AEDPA thus provides three avenues for relief: one based on a determination that the outcome was itself contrary to clearly established federal law; another based on a determination that the outcome was infected by an unreasonable application of the law to the facts; and a third based on an unreasonable determination of the facts themselves. With respect to the first two, the Supreme Court has explained:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). With respect to the third, the Supreme Court has explained:

> We may not characterize . . . state-court factual determinations as unreasonable "merely because [we] would have reached a different conclusion in the first instance." Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference. If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"

*Brumfield v. Cain*, 135 S.Ct. 2269, 2277 (2015) (citations omitted).

B.  Ineffective Assistance of Counsel

The standard for relief based on ineffective assistance of counsel is well known and familiar: a person is entitled to relief only when counsel's conduct fell below an objective standard of reasonableness and, in addition, there is a reasonable probability that the outcome would have been different if counsel had acted reasonably (*i.e.*, that the departure from objective reasonableness prejudiced the case and, by extension, the client). *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In evaluating counsel's performance, courts apply a "strong presumption" that the representation "fell within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104. As the Eleventh Circuit explained:

> [The test for ineffective assistance] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). It is therefore not an understatement to say that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Importantly for purposes of this case, the *Strickland* standard applies to alleged ineffective assistance in connection with plea agreements. *Hill v. Lockhart*, 474 U.S. 52, 58

(1985). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). To establish "prejudice" when the alleged deficiency results in the rejection of an offer:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than the judgment and sentence that in fact were imposed.

*Id.* at 164.[2]

### C. AEDPA's "Unreasonable Application" Standard and Ineffective Assistance of Counsel Claims

A state court's application of *Strickland* to a post-conviction claim of ineffective assistance is subject to review in a habeas proceeding. But establishing that a state court's application of *Strickland* was unreasonable for purposes of AEDPA is especially difficult. As the Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential" and when the two apply in tandem, review is "doubly so." The *Strickland* standard is a general one, so the range of reasonable applications

---

[2]Even when counsel fails adequately to explain the punishment to which a defendant is exposed, the resulting prejudice is ameliorated when accurate information is revealed to the defendant in open court. *See James v. United States*, 623 F. App'x 973, 975 (11th Cir. 2015) (*per curiam*) (government identified maximum sentence at arraignment; "despite any of the alleged failures by his counsel, James was aware of the plea offers from the government, and the record clearly shows that we was aware of the potential maximum consecutive sentences he faced."); *United States v. Oliver*, 522 F. App'x 525, 529 (11th Cir. 2013) (*per curiam*) (defendant acknowledged during plea colloquy that he understood sentence based on court's statements); *United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007) (*per curiam*) (district court "itself explained to Wilson – in detail – the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea."); *Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) (*per curiam*) (court explained maximum penalties but Cruz "never mentioned that her counsel ... assured her that she would receive a lesser sentence.").

> is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Harrington*, 562 U.S. at 105 (emphasis added). More to the point:

> *The pivotal question is whether the state court's application of the Strickland standard was unreasonable.* This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under ADEPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.*

*Id.* at 101 (citation omitted) (emphasis added).

### D. AEDPA's Standard of Review for State Court Findings of Fact

AEDPA contains its own standard of review for state court findings of fact: "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The clear and convincing standard is highly deferential, even more so than the typical clearly erroneous standard. *Wood v. Allen*, 542 F.3d 1281, 1285 (11th Cir. 2008) (*quoting Stephens v. Hall*, 407 F.3d 1195, 1201 (11th Cir. 2005), *aff'd*, 558 U.S. 290 (2010)). As a result, "where factual findings underlie the state court's legal ruling, our already deferential review [under AEDPA] becomes doubly so." *Childers v. Floyd*, 642 F.3d 953, 972 (11th Cir. 2011) (*en banc*).

## III. ANALYSIS

Petitioner contends that his counsel provided ineffective assistance by "misadvising the petitioner to reject the state's plea offer." (Doc. 1 at 5). In particular, he contends:

> Prior to trial, defense counsel brought to the Petitioner, a plea offer by the state, which was 15 years in prison for both counts. The Petitioner, unknowledgeable in the applicable law, inquired of defense counsel whether it was best to accept the plea offer relayed to him.
>
> Defense counsel advised Petitioner that he thought that the state's plea offer was not that good of a deal and to decline it. Petitioner was not advised of the maximum sentence he could receive from losing at trial, nor did counsel offer any advice on the state's plea except to refuse acceptance of it. . . .
>
> The Petitioner asserts that the record is void of any discussion of counsel's advice on acceptance or refusal of the state's plea offer and that by failing to discuss with the Petitioner the adverse sentencing that he was potentially facing, denied the Petitioner of his Six and Fourteenth Amendment rights of the U.S. Constitution.

(Doc. 1 at 5-6).[3]

The state court denied relief. The state court found, based on the statements made at the pre-trial hearing, that (a) Petitioner "made the decision to not accept the State's offer, on his own initiative, because he refused to accept a fifteen-year minimum mandatory sentence;" (b) Petitioner's attorney "advised him of the maximum sentence;" and (c) Petitioner "stated to the Court that he understood the maximum penalties" to

---

[3]Petitioner contends an evidentiary hearing is necessary because the details of his conversations with counsel regarding the plea offer are not in the record. (Doc. 11 at 2). An evidentiary hearing is not required, however, when "the record refutes the appellant's factual allegations or otherwise precludes habeas relief . . . ." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

which he was exposed if he went to trial and lost. (Doc. 8-5 at 139-40). From this, the state court concluded that Petitioner failed to demonstrate either deficient performance or prejudice, thus precluding relief under the *Strickland* standard. (Doc. 8-5 at 140).[4]

### A. No Unreasonable Determination of Facts.

The state court's rejection of Petitioner's ineffective assistance claim is not based on an unreasonable determination of the facts, thus precluding relief under § 2254(d)(2).

As a threshold matter, the state court's finding regarding Petitioner's understanding of the maximum sentence is presumed to be correct. Petitioner clearly states that counsel did not advise him about the maximum sentence to which he was exposed. But Petitioner's statements, although evidence, do not constitute the clear and convincing evidence necessary to overcome the presumption of correctness that attaches to the state court's contrary finding.

Moreover, the state court's finding is undergirded – and Petitioner's contrary statements are undermined – by the events at the plea hearing. The prosecutor, the judge and counsel all referenced potential sentences of thirty years to life for either or both crimes, yet Petitioner did not express surprise, ask questions or otherwise indicate a misunderstanding about the charges or potential sentences. If Petitioner did not understand the maximum potential sentences to which he was exposed, or believed he

---

[4]The order denying post-conviction relief was written by the judge who presided at the hearing regarding the plea offer as well as at trial and at sentencing. *Compare* Doc. 8-1 at 7 and Doc. 8-5 at 20 *with* Doc. 8-5 at 141.

had been told something else by his counsel, he would be expected to pipe up and clarify things. The fact that he did not voice concern or confusion implies there was no surprise or misunderstanding and that, instead, he knew exactly what was going on and what he was getting into if he rejected the plea offer.

Furthermore, Petitioner represented, under oath, that he understood the nature of the charges and the maximum penalties that could be imposed; that he had a meaningful discussion about them with counsel; and that he came to the decision to reject the offer freely and voluntarily. Petitioner's sworn statements cannot be ignored because "there is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

The state court's finding regarding Petitioner's understanding of the maximum sentence to which he was exposed is not unreasonable. Petitioner is therefore not entitled to relief under § 2254(d)(2).

**B.     No Unreasonable Application of Law to Facts.**

The state court's rejection of Petitioner's claim is not based on an unreasonable application of the law to the facts, thus precluding relief under § 2254(d)(1).

Even assuming counsel performed deficiently by failing to advise Petitioner regarding his potential sentence, Petitioner cannot demonstrate prejudice from that deficiency because he clearly understood the seriousness of the charges and the sentences that attached to them. At the pretrial hearing, the prosecutor clearly stated that the potential sentence on the trafficking charge was thirty years; the judge clearly stated that

the potential sentence on the robbery charge was thirty years (assuming Petitioner qualified as a habitual felony offender); and Petitioner's counsel clearly stated that an HFO designation could increase the sentence for trafficking to life. Petitioner cannot credibly claim he did not understand what he was up against if he were to reject the plea offer and go to trial. Nor can he credibly claim he would have acted differently if counsel had said something more or said something differently.[5]

The state court's application of the law to the facts of the case was not unreasonable. Petitioner is therefore not entitled to relief under § 2254(d)(1).

• • • •

This ground for relief is therefore denied.

### IV. Certificate of Appealability

This Court should grant an application for a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y*

---

[5]Petitioner attempts to avoid this inference by arguing, in words and in substance, that his counsel did not know how long he might be sentenced so, therefore, how could he. (Doc. 11 at 3). Petitioner cites to the hearing, where counsel notes that Petitioner could be sentenced anywhere from thirty years to life on the trafficking charge if he qualified as a habitual felony offender. (Doc. 8-1 at 15). Petitioner's argument proves too little and also too much: counsel's statement merely reflects his correct understanding of the range of sentences that could be imposed and demonstrates Petitioner knew, or should have known, that he was staring down a potential sentence that was many multiples of the State's offer if he went to trial and lost.

*Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). Petitioner has not demonstrated that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petition has failed to make a substantial showing of the denial of a constitutional right. Thus, this Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 9th day of May, 2017.

JOHN ANTOON
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-5 5/5
Counsel of Record
John Henry Lancaster